UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA,

Plaintiff,

v.

CLEVELAND J. WHITE FEATHER,

Defendant.

Case No. 11-cr-40060-JPG

## MEMORANDUM AND ORDER

This matter comes before the Court on defendant Cleveland J. White Feather's *pro se* motion for a sentence reduction for "extraordinary and compelling reasons" pursuant to the First Step Act of 2018, Pub. L. No. 115-391, § 603(b)(1), 132 Stat. 5194, 5239 (2018) (codified at 18 U.S.C. § 3582(c)(1)(A)) (Doc. 216).  The Government responded by filing a motion to dismiss on the grounds of failure to exhaust administrative remedies (Doc. 217), and the defendant has responded to that motion (Doc. 219).

## I.   Compassionate Release

The First Step Act expanded the sentence reduction provisions[1] of § 3582(c)(1)(A) by opening the door for a defendant to move for a reduction rather than only allowing the Director of the Bureau of Prisons ("BOP") to so move.  First Step Act, § 603(b)(1) (codified at 18 U.S.C. § 3582(c)(1)(A)); *Rutherford v. United States*, 146 S. Ct. 1320, 1328 (2026); *United States v. Sanford*, 986 F.3d 779, 781 (7th Cir. 2021); *United States v. Gunn*, 980 F.3d 1178, 1179 (7th Cir.

---

[1] The reduction provisions are often referred to as "compassionate release" because historically the grounds for reduction have included the defendant's health, age, and/or family circumstances as "extraordinary and compelling reasons" for immediate release.  Release was called "compassionate" because it was viewed as granting mercy for an ailing or aged defendant or one with family needs.  *See Fernandez v. United States*, 146 S. Ct. 1292, 1303 (2026).

2020).  The relevant portion of the law provides:

> **(c) Modification of an imposed term of imprisonment.**—The court may not modify a term of imprisonment once it has been imposed except that—
>> (1) in any case—
>>> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>>>> (i) extraordinary and compelling reasons warrant such a reduction. . .
>>> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. . . .

18 U.S.C. § 3582(c)(1)(A).  The failure to exhaust is an affirmative defense that must be asserted by the Government or will be waived.  *Gunn*, 980 F.3d at 1179.

The exhaustion of remedies portion of this statute provides that the defendant may file a motion for compassionate release after the earlier of two events:  (1) "fully exhaust[ing] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion" or (2) "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility."  As a practical matter, (2) will almost always provide the relevant exhaustion mark because it is virtually impossible to exhaust the BOP's comprehensive administrative remedy process within 30 days.  Thus, the Court asks whether the defendant waited 30 days after the warden received his request before filing his motion.

The 30-day period is a mandatory claim-processing rule that must be enforced by the Court if the Government raises it.  *Sanford*, 986 F.3d at 782.  Although the Court has the power to waive some exhaustion requirements, it cannot waive this one because it was specifically

2

mandated by Congress in the statute. *Id.* (noting that "may not modify a term of imprisonment" is language of a mandatory claim-processing rule that must be enforced); *see McCarthy v. Madigan*, 503 U.S. 140, 144 (1992) (PLRA exhaustion requirement); *Ross v. Blake*, 578 U.S. 632, 638-39 (2016) (same).

Additionally, the defendant must have asserted the same or similar issues as grounds for relief in his request to the warden as he does in his motion for compassionate release. *United States v. Williams*, 62 F.4th 391, 393 (7th Cir. 2023); *United States v. Williams*, 987 F.3d 700, 703 (7th Cir. 2021). Otherwise the warden is not equipped to properly consider the defendant's request.

Thus, where an inmate has not satisfied either option for exhausting his administrative remedies for compassionate release—citing the same "extraordinary and compelling" reasons in his motion—*before* filing his motion, the Court must deny the defendant's motion without prejudice to another motion filed *after* exhaustion. *See Sanford*, 986 F.3d at 782.

## II.    Analysis

In April 2013, a jury found White Feather guilty of one count of murder by a federal prisoner serving a life sentence (for a 1978 federal murder conviction) in violation of 18 U.S.C. § 1118. In August 2013, the Court sentenced White Feather to serve life in prison, the only sentence available under the circumstances. *See* 18 U.S.C. § 1118(a). White Feather appealed his sentence, but in September 2014, the Court of Appeals affirmed the Court's judgment. *See United States v. White Feather*, 768 F.3d 735 (7th Cir. 2014). White Feather did not seek a writ of *certiorari* from the United States Supreme Court. He later filed a motion under 28 U.S.C. § 2255, which the Court denied as untimely. *White Feather v. United States*, 20-cv-182-JPG (S.D. Ill. June 29, 2020).

3

White Feather now asks the Court to reduce his sentence on the grounds that it is unusually long and is therefore an extraordinary and compelling reason for relief under U.S.S.G. § 1B1.13(b)(6) (2025).  He claims there has been a change in the law since he was sentenced that would render his sentence grossly disparate from the one he would receive today for the same crime.  He does not identify the change in the law to which he refers.

The Government responded by asking the Court to dismiss White Feather's motion because he failed to present any evidence he had exhausted his administrative remedies before filing the motion.

In White Feather's response to the motion, he appears to object to the Government's serving its motion on his former counsel.  He further notes that his original murder conviction was in 1978, prior to enactment of the Sentencing Reform Act of 1984 ("SRA"), which created the current compassionate release provision.  He suggests that the provisions for hastening parole eligibility that existed before the SRA apply to him, *see* 18 U.S.C. § 4205 (1978), and that such provisions have no exhaustion requirement.  He also suggests his health care when he was at the United States Penitentiary at Marion, Illinois, and now when he is at the Administrative Maximum Security Prison at Florence, Colorado, is inadequate.  Notably, he does not allege or provide any evidence of exhaustion of administrative remedies under § 3582(c)(1)(A).

The Court must enforce the exhaustion requirement because the Government has invoked it.  There is no allegation or evidence in this case that the defendant ever asked the warden to file a request for compassionate release on the defendant's behalf.  Where the defendant has not completed this necessary first step toward exhaustion under either method, his motion is premature.  Accordingly, the Court will grant the Government's motion to dismiss (Doc. 217) and will deny the defendant's motion (Doc. 216) without prejudice to another motion filed *after*

fully exhausting all administrative rights to appeal a failure of the BOP to bring a motion *or* the lapse of 30 days from the date the warden receives his request, whichever is earlier.

To the extent White Feather believes he is entitled to relief under 18 U.S.C. § 4205 (1978) for his pre-SRA life sentence, a motion under that statute must be directed to the court that had jurisdiction to impose that sentence, 18 U.S.C. § 4205(b), not this Court. This Court lacks jurisdiction to disturb White Feather's 1978 sentence.

To the extent White Feather is dissatisfied with his current health care, he should file an administrative remedy at his current institution. After exhausting his administrative remedies, he may then file a civil suit.

Finally, despite his failure to exhaust administrative remedies for compassionate release, it is clear White Feather aims in his motion to overturn the life sentence this Court imposed in 2013. Consequently, his motion is, in reality, a motion under 28 U.S.C. § 2255. Any motion that seeks to vacate a sentence is a § 2255 motion regardless of its label. *Gonzalez v. Crosby*, 545 U.S. 524, 531 (2005); *see United States v. Scott*, 414 F.3d 815, 816 (7th Cir. 2005). And this is not the defendant's first § 2255 motion. *See White Feather v. United States*, 20-cv-182-JPG (S.D. Ill. June 29, 2020). In order for the Court to consider a second or successive petition, the Seventh Circuit Court of Appeals must certify the successive petition pursuant to 28 U.S.C. § 2255(h). *Curry v. United States*, 507 F.3d 603, 604 (7th Cir. 2007); *Nunez v. United States*, 96 F.3d 990, 991 (7th Cir. 1996). It has recently refused to authorize such a petition (Doc. 223). Therefore, the Court does not have jurisdiction to entertain this § 2255 motion and will dismiss it for lack of jurisdiction.

## III.    Conclusion

For all of these reasons, the Court **DISMISSES** White Feather's § 2255 motion for **lack**

**of jurisdiction** as unauthorized successive motion, **GRANTS** the Government's motion to dismiss (Doc. 217), and **DENIES without prejudice** as premature the defendant's request for a § 3582(c)(1)(A) sentence reduction (Doc. 216).

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings and Rule 22(b)(1) of the Federal Rules of Appellate Procedure, the Court considers whether to issue a certificate of appealability of this final order adverse to the petitioner.  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); *see Tennard v. Dretke*, 542 U.S. 274, 282 (2004); *Ouska v. Cahill-Masching*, 246 F.3d 1036, 1045 (7th Cir. 2001).  To make such a showing, the defendant must "demonstrate that reasonable jurists could debate whether [the] challenge in [the] habeas petition should have been resolved in a different manner or that the issue presented was adequate to deserve encouragement to proceed further."  *Ouska*, 246 F.3d at 1046; *accord Buck v. Davis*, 580 U.S. 100, 115 (2017); *Miller-El v. Cockrell*, 537 U. S. 322, 327 (2003).  The Court finds that the defendant has not made such a showing and, accordingly, **DECLINES** to issue a certificate of appealability.

**IT IS SO ORDERED.**
**DATED:  July 22, 2026**

_____
**J. PHIL GILBERT**
**DISTRICT JUDGE**